UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSALIE HORVATH, an individual,

Plaintiff,

v.

Case No. 24-cv-12707
Honorable Linda V. Parker

PNC BANK, NA,
A Foreign Limited Liability Company,
and JOSEPH NATHANSON,
an individual,

Defendants.
_________________________________/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 21)**

On October 14, 2024, Plaintiff Rosalie Horvath filed this lawsuit to recover for injuries sustained in a slip and fall outside of a PNC Bank in Trenton, Michigan, on May 24, 2023. (ECF No. 21, PageID.109.) Defendant PNC Bank, NA ("PNC") leases the property from its owner, co-defendant Joseph Nathanson. (*Id.*) Plaintiff alleges that Defendants were negligent in allowing risky conditions to develop on the property. She further alleges that Defendants breached their duty under Michigan premises liability law to either make the conditions safe or warn invitees about them. (ECF No. 1, PageID.15-16.)

The matter is presently before the Court on Defendants' motion to dismiss and for summary judgment.[1] (ECF Nos. 21, 24-25.) Finding the facts and legal arguments adequately presented in the parties' briefs, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f). For the reasons below, the Court is now granting Defendants' motion.

## I. Standards of Review

### A. Motion to Dismiss or for Judgment on the Pleadings

A Rule 12(b)(6) or 12(c) motion tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996); *see also Hindel v. Husted*, 875 F.3d 344, 346 (6th Cir. 2017) (citing *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008)) (explaining that a Rule 12(b)(6) and Rule 12(c) motion are evaluated under the same standards). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S.

[1] Despite titling their motion a "Motion for Summary Judgement," Defendants are also moving to dismiss Plaintiff's ordinary negligence claim under Federal Rule of Civil Procedure 12(b)(6). However, because Defendants first answered the Complaint, Rule 12(b)(6) is not the proper vehicle for seeking dismissal; rather, a Rule 12(c) motion for judgment on the pleadings is the procedure.

89, 94 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. (citing *Twombly*, 550 U.S. at 556).

**B. Summary Judgment Standard**

Summary judgment pursuant to Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To

demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a mere "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1). The parties must designate with specificity the portions of the record such that the court can "readily identify the facts upon which [each] … party relies[.]" *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied* 494 U.S. 1091 (1990). It is not the court's responsibility to construct a party's argument from the record or search out facts from the record supporting those arguments. *See, e.g., Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)) ("the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact"); *see also InterRoyal Corp.*, 889 F.2d at 111 ("A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.")

## III. Factual Background

### A. Plaintiff's Injury

On May 24, 2023, Plaintiff was visiting the PNC Bank to handle paperwork related to her brother's bank account. (ECF No. 24 at PageID.263; ECF No. 21-6, PageID.209.) She arrived by car and approached the entrance of the bank where she encountered an elevated lip. (ECF No. 21-6, PageID.208.) The lip separated the parking lot and the sidewalk. (*Id.* at PageID.122.) That lip can be seen below, although it was unpainted at the time of Plaintiff's accident. (ECF No. 24, PageID.265.) It is painted yellow now.[2] (*See Id.*)



*Figure 1*: Exterior of subject premises, showing a painted lip separating the parking lot and sidewalk. (ECF No. 21, PageID.122.)

[2] Plaintiff states in her response to Defendants' motion, that Defendants' subsequent remedial measures in painting the lip constituted an "implicit acknowledgement of its danger," (ECF No. 24, PageID.269), but subsequent remedial measures are not admissible to prove Plaintiff's claims. *See* Fed. R. Evid. 407.

Before her accident on May 24, 2023, Plaintiff visited the premises numerous times and traversed them without issue, including the lip. (ECF No. 21, PageID.123-24.) Plaintiff could not recollect visits prior to May 24, 2023 where the lip was unmaintained or uneven. (ECF No. 21-6, PageID.210.)



*Figure 2*: The curb outside PNC. *A* ruler shows the height of the curb *is* approximately 1.5 inches. *(ECF No. 24, PageID.265.)*

The lip was elevated by approximately an inch and-a-half and rose at a 90-degree angle, as shown above. *See* (ECF No. 24, at PageID.265.) Plaintiff did not notice this unevenness on the day of her accident. (ECF No. 21-6, PageID.208.) When Plaintiff attempted to step up onto the sidewalk, she allegedly tripped on the lip after running her left foot against it. (ECF No. 24, PageID.263.)



*Figure 3*: Screenshot from surveillance camera video showing Plaintiff as she reaches the unmarked lip. *(ECF No. 24, PageID.265)*

Plaintiff's initial Complaint ascribed her fall to an "uneven and unmaintained walkway and step in the parking lot." (ECF No. 1, PageID.15.) But in her deposition, Plaintiff also claimed "there was a lot of gravel right at the edge of the [...] parking area," and that this could have "made [her] slip." (ECF No. 21-6, PageID.210). At that deposition, Plaintiff admitted she "has no idea" what exactly caused her fall. (ECF No. 21-6, PageID.210.) Importantly, Plaintiff consistently maintains that the lip itself was the primary hazard, regardless of any gravel accumulation on it. (ECF No. 24, PageID.269.)

Plaintiff alleges that the lip's unmarked nature caused it to blend in with the surrounding terrain. (ECF No. 24, PageID.263, 265.) She claims that shadows cast by Defendant's building further obscured the lip, making it difficult to see. (ECF No. 24, PageID.256, 263.) Plaintiff has acknowledged that "it was just the distance," not "unmaintained concrete" or "some defect between two pieces of concrete," which caused her to fall. (ECF No. 21-6, PageID.210.)

Plaintiff claims to have been in healthy shape before her fall. (ECF No. 1, PageID.15.). When she fell, Plaintiff received an avulsion fracture. (ECF No. 1, PageID.15.) Due to her fall, Plaintiff claims to have suffered, *inter alia*, "pain, humiliation, [and] embarrassment," and extensive financial burdens associated with addressing her injury. (*Id.*) To recover, she sues PNC and Nathanson, the lessee and owner of the premises, respectively.

### B. The Subject Property

The subject property was originally owned by NCFK Properties, LLC ("NCFK") and the original tenant was National City Bank of Michigan/Illinois ("National City"). (ECF No. 21, PageID.119.) NCFK and National City entered a lease agreement in 2001. (ECF No. 21-2). Under the agreement, the original tenant was responsible for "maintain[ing] [and] repair[ing] … the Premises including common areas" as necessary. (*Id.* at PageID.152.) That agreement defined common areas to include "paved parking [and] service areas, sidewalks, ramps, roadways, driveways, curbs, curbcoats, and all similar public facilities … on the premises." (*Id.* at PageID.147.) When PNC took over National City, PNC did not alter the provisions in the lease regarding maintenance of the premises. (*See* ECF No.21-3.)

On October 10, 2022, NCFK sold the property to Nathanson. (ECF No. 21, PageID.119.) Nathanson assumed the lease with PNC when he became the new property owner. (*Id.*) The assumed lease preserved the lease provisions assigning maintenance responsibilities to the tenant. (ECF No. 21, PageID.119-120.) At the same time, Nathanson retained the right to inspect and repair the premises at his option, under certain limitations: Defendant Nathanson could only enter the premises during business hours and was obligated to provide PNC with notice of his visits beforehand. (ECF No. 21-2, PageID.160.)

## IV. Applicable Law and Analysis

Plaintiff alleges that Defendants' failure to maintain the premises and to mark or warn of a dangerous tripping hazard constitutes "active negligence" by each of them. (ECF No. 24, PageID.267-68.) Plaintiff further alleges that in failing to inspect, clean, or warn of the foreseeable hazard posed by the lip, Defendants breached their duty under Michigan's premises liability laws, to either make the conditions safe or warn invitees about them.. (*Id.*)

### A. Ordinary Negligence (Count I)

Defendants seek dismissal of Plaintiff's ordinary negligence claims, arguing that Plaintiff's cause of action arises exclusively under Michigan premises liability law. Because Plaintiff's alleged injuries arise from a physical condition of Defendants' premises, and not from the affirmative conduct of any defendant, the Court agrees and is dismissing her ordinary negligence claim (Count I).

Ordinary negligence and premises liability are distinct theories of liability under Michigan law. Ordinary negligence flows from the affirmative conduct of the defendant, whereas premises liability "emanates merely from the defendant's duty as an owner, possessor, or occupier of land." *Kessler v. Visteon Corp.*, 448 F.3d 326, 331 (6th Cir. 2006) (quoting *Laier v. Kitchen*, 702 N.W.2d 199, 208 (Mich. Ct. App. 2005)). When an injury arises from a physical condition of the

land itself, rather than from the active conduct or undertakings of its possessor, the claim is strictly governed by premises liability principles. *Id.*

A plaintiff cannot convert a premises liability claim into an ordinary negligence claim simply by alleging that the possessor of the property actively created or contributed to the dangerous condition. *Hall v. IKEA Prop. Inc.*, 171 F. Supp. 3d 634, 639 (E.D. Mich. 2016). Even when a landowner's active conduct or failure to act "allowed" the unreasonable risk to manifest, the action arises under premises liability if the injury ultimately arose from that dangerous condition on the land. *See*, *e.g.*, *id.* (holding that "the conduct alleged [was] not illustrative of the type of overt and affirmative conduct required to support a claim for ordinary negligence separate from a premises liability claim" where the property owner provided an undersized loading dock plate at his business, causing someone to slip and suffer fractures).

An ordinary negligence claim is available only if the injury arose from negligent conduct that is distinct from a condition of the land. *Kessler*, 448 F.3d at 331; *Hall v. IKEA*, 171 F.Supp.3d. at 640. For example, property owners may owe a duty of ordinary negligence arising from the active use of their property, which is simultaneous and independent of the owner's duties under premises liability law. *See*, *e.g.*, *Kessler*, 448 F.3d (finding that the property owner had a vicarious duty of ordinary negligence arising from its employee's active operation of industrial

machinery on the premises). When no such overt and affirmative conduct exists, a plaintiff's cause of action arises not under ordinary negligence, but premises liability alone.

Here, Plaintiff's claim sounds exclusively in premises liability, not ordinary negligence. Plaintiff argues that Defendants' failure to maintain the premises or warn of a dangerous tripping hazard constitutes "active negligence." (ECF. No. 24, PageID. 267-68.) But those allegations do not identify the sort of overt, affirmative conduct necessary to support a separate claim for ordinary negligence. Rather, Plaintiff only alleges that Defendants failed to maintain the premises and warn of a dangerous condition. (ECF. No. 24, PageID. 267-68.) For these reasons, the court is **GRANTING** Defendants' motion to dismiss Plaintiff's ordinary negligence claim.

**B. Nathanson's Liability**

Defendants argue that Nathanson is entitled to summary judgment because he lacked any relevant duty to Plaintiff, as PNC, not Nathanson, was responsible for maintaining and repairing the subject property. The Court is granting summary judgment to Nathanson because he in fact had no duty to maintain the subject premises or to warn Plaintiff of any hazard.

Under Michigan law, "[t]he general rule is that a landlord, absent an agreement to the contrary, surrenders possession of the leasehold and holds only a reversionary interest and, thus, does not have an obligation to maintain the premises in repair." *Williams v. City of Detroit*, 339 N.W.2d 215, 217 (Mich. Ct. App. 1983). In *Little v. Howard Johnson Co.*, 455 N.W.2d 390 (Mich. Ct. App. 1990), the plaintiff filed a premises liability action against the commercial landlord after the plaintiff was injured outside of a restaurant on the premises. There, the court noted that the franchise agreement specifically delegated responsibility for maintaining "the interior and exterior of the buildings and surrounding premises in a clean, orderly, and sanitary condition [to the tenant]." *Id.* at 679. Although the property owner maintained *some* control over the property under the agreement, the court in *Little* determined he did not have enough "control and direction over the actual day-to-day work" of his tenant to be held vicariously liable to the tenant's invitee on the property. [3] *Id.* at 681.

The court in *Little* was also clear that when landowners retain rights to inspection and oversight of their properties, they do not assume "control" over those properties in the relevant sense. *Little*, 455 N.W.2d at 394 (holding that "[i]t is not enough that the owner retained mere contractual control, the right to make

[3] Things like clearing "obstruction[s] [from] a walkway" have been referred to as paradigmatic "day-to-day" maintenance duties. *VanDenBerg v. Loseth*, 857 F. Supp. 1193, 1199 (W.D. Mich. 1994).

safety inspections, or general oversight"). Because the defendant in *Little* had no influence over the "daily maintenance" of the premises or the "methods and details" of that maintenance, the court determined no "triable issue concerning defendant's right to control … day-to-day operations" had been presented. *Id.* at 682. Thus, when a landowner "cedes possession and control of the premises…the law is satisfied to look to the [beneficiary] for liability for injuries to third persons," notwithstanding the retention of a nominal right to occasionally inspect or oversee the property. *Id.*; *Merritt v. Nickelson*, 287 N.W.2d 178, 181 (Mich. 1980). A party absolves themselves of the duty to make their premises safe when they "loan" their possessory rights to another. *Merritt*, 287 N.W.2d at180-81.

Here, while Nathanson owned the subject property when Plaintiff had her accident, the relevant question is whether he retained possession and control. *Id.* He did not. Rather, Nathanson delegated responsibility for maintenance to his lessee, had no control over the day-to-day maintenance of the property, and retained only limited contractual rights under the lease.

As in *Little*, the lease between Nathanson and PNC Bank explicitly allocates maintenance responsibilities between the parties. Pursuant to the lease, when Plaintiff was injured, it was the *tenant's* obligation to "maintain, repair, and replace as necessary, the Premises including the Common Areas … and every part thereof … including … parking areas [and] curbing." (ECF No. 21-2, PageID.152.) Like

the property owner in *Little*, nothing in the lease gave Nathanson influence over the daily maintenance of the premises, or the methods and details of that maintenance.

The lease provisions reserving rights to Nathanson to inspect and repair the premises do not create a triable issue concerning his right to control the premises. Plaintiff points out that, pursuant to the lease, Nathanson had the ability to "enter upon the premises [to] put [them] in good order, condition and repair in accordance with [the] lease." (ECF No. 21-2, PageID.152.) But that provision is expressly contingent on the tenant's failure to fulfil obligations of the lease and can only be exercised upon giving notice. (*Id.*) Like in *Little*, Nathanson retained nothing beyond "mere contractual control, the right to make … inspections, or general oversight." *Little*, 455 N.W.2d at 394.

Because such rights do not establish the possession and control necessary to impose a duty of care, and Nathanson delegated maintenance to PNC in the lease, he owed no duty to Plaintiff as a matter of law. Therefore, the Court is **GRANTING** summary judgment to Nathanson.

### C. Premises Liability

Defendants also seek summary judgment as to Plaintiff's premises liability claim, generally. Defendants argue that summary judgment is warranted because (1) Plaintiff fails to establish causation where she could not determine the exact

cause of her fall, and (2) assuming arguendo that Plaintiff's fall was caused by the lip, no reasonable juror could find a breach where there was nothing unusual, defective, or dangerous about it. Finding that Plaintiff has failed to raise a genuine dispute as to Defendant PNC's breach of its duties, the Court is granting summary judgment as to this claim..

Premises possessors are under a duty to exercise reasonable care to protect invitees from unreasonable risks of harm caused by dangerous conditions on their land. *Kessler*, 448 F.3d. at 331. Premises possessors breach this duty when they "know[] or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Lowrey v. LMPS & LMPJ, Inc.*, 890 N.W.2d 344, 348 (Mich. 2016).

Historically, Michigan premises liability law ascribed land possessors no duty to protect invitees from open and obvious dangers, *unless* special aspects of the condition rendered the risk unreasonably dangerous. *See generally*, *Kandil-Elsayed*, 1 N.W.3d 44, 51-63 (Mich. 2023). The test for open and obvious is "whether it is reasonable to expect that an average person with ordinary intelligence would have discovered [the hazard] upon casual inspection." *Hoffner v. Lanctoe*, 821 N.W.2d 88, 94-95 (Mich. 2012)

The Michigan Supreme Court substantially altered the framework governing premises liability claims in *Kandil-Elsayed.* There, the Court declared that the open and obvious nature of a condition is relevant to the element of *breach* instead of duty. *Kandil-Elsayed*, 1 N.W.3d at 48. While *Kandil-Elsayed* shifted focus of this inquiry to breach, "it did not otherwise alter the substance of the doctrine." *Wright-Burton v. City of Detroit*, No. 359033, 2024 WL 2096214, at *3 (Mich. Ct. App. May 9, 2024), *appeal denied*, 10 N.W.3d 285 (2024) (emphasis added). The *Kandil-Elsayed* Court made it clear that shifting the "open and obvious" inquiry from duty to breach does not mean a jury question is raised in all "open and obvious" cases. *Kandil-Elsayed*, 1 N.W.3d at 52 n. 2 ("where the evidence presented to a court concerning breach generates no questions of fact, the issue can be decided by the judge as a matter of law").

Plaintiffs do not generate questions of material fact regarding breach in premises liability cases where they cite an open and obvious hazard, but identify nothing special about the hazard to suggest it posed an unreasonable risk of harm. *Wright-Burton*, 2024 WL 2096214 at *3. In *Wright-Burton*, the plaintiff sustained a knee injury after falling over an unmarked curb between the street and sidewalk. *Wright-Burton*, 2024 WL 2096214 at *1. Despite clearly identifying the curb as responsible for her fall, the court held that "curbs [are] generally discoverable on casual inspection" and that "there is nothing unusual about a curb separating … a

street and a sidewalk in front of a business." *Id.* at *3. Because plaintiff had "not identified anything about the curb that would render it dangerous or … indicate [that] it posed an unreasonable risk of harm," she had "generate[d] no questions of fact" concerning the defendants' alleged breach. *Id.* The court noted that, the "[d]efendants' only duty, after all, was to exercise reasonable care to protect [the] plaintiff from an *unreasonable* risk of harm caused by a *dangerous* condition on the land." *Id.* (emphasis in original).

To overcome the open and obvious defense, a plaintiff may demonstrate that "special aspects" of a condition make its risks unreasonably unusual, dangerous, or effectively unavoidable. *Kessler*, 448 F.3d. at 340; *Hoffner*, 821 N.W.2d. at 96 "[E]xceptions to the open and obvious doctrine are *narrow* and designed to permit liability for such dangers only in *limited*, extreme situations". *Hoffner*, 821 N.W.2d at 101. Constant low-light conditions do not meet this threshold. *Singerman v. Municipal Serv. Bur.*, 565 N.W.2d 383 (1997). If a low-light condition is constant, "not subject to unexpected fluctuations or other changes[,]" and readily apparent, the poor lighting itself constitutes an open and obvious condition that invitees are expected to discover and appreciate. *Id.* at 144 (holding that there "was nothing to prevent [the] plaintiff from realizing that [a] hockey rink was inadequately lighted" where the inadequate lighting was consistently inadequate).

Plaintiff's premises liability claim hinges on her assertion that the premises posed an unreasonable risk despite the open and obvious nature of the lip. But Plaintiff's contention fails because there was nothing unusual, defective, or unreasonably dangerous about the unmarked lip outside of the bank. This is true despite Plaintiff's assertion that the shadow made it harder to see the lip. The recording from the surveillance video in front of the bank and photos of the area demonstrate that an average person would have been able to discover the lip upon casual inspection, even with the shadows. *See Warber v. Trinity Health Corp.*, No. 239665, 2003 WL 21995502, at *2 (Mich. Ct. App. Aug. 21, 2003) (uneven sidewalk "deeply shaded by vegetation" still open and obvious); *Henderson v. PKT, Inc.*, No. 253439, 2005 WL 2445136, at *2 (Mich. Ct. App. Oct. 4, 2005) (trail of water constituted an open and obvious hazard, despite claim that the area was dimly lit and shadowed by trees). The shadow neither hid nor concealed the lip from view.

During her deposition in this matter, Plaintiff stated that there was nothing unmaintained, unlevel, or defective about the lip; that it was "just the distance" which "caused [her] to fall." (ECF No. 21-6, PageID.210.) Although Plaintiff suggested that gravel could have contributed to her fall, she admitted to having "no idea" whether it actually did so, and "consistently identified the lip as the primary hazard." (ECF No. 24, PageID.269.) Because it is well settled that "there is

nothing unusual about a curb separating … a street and a sidewalk in front of a business," and Plaintiff alleges nothing unmaintained, unlevel, or defective about the lip, Plaintiff has failed to meet her burden on summary judgment to show some special aspect of the hazard to raise an issue of fact regarding breach. *Wright-Burton*, 2024 WL 2096214 at *3.

Because Plaintiff fails to identify special aspects of the open and obvious lip, she is unable to raise a genuine dispute as to PNC's alleged breach. Thus, PNC is entitled to judgement as a matter of law and the Court is **GRANTING** PNC's motion for summary judgment on Plaintiff's premises liability claim.

## V. Conclusion

To summarize, because Plaintiff's injury arose solely from a physical condition of Defendants' premises, and not from any affirmative conduct by Defendants, her ordinary negligence claim (Count I) must be dismissed. Nathanson is entitled to summary judgment because he lacked a relevant duty to Plaintiff after loaning his possessory rights over the premises to PNC. Lastly, Defendants are entitled to summary judgment as to Plaintiff's premises liability claim (Count II) because she fails to establish a genuine dispute of material fact as to whether the alleged hazard, which was open and obvious, had special aspects rendering it unreasonably dangerous.

Accordingly,

**IT IS ORDERED** that Defendants' motion (ECF No. 21) is **GRANTED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: August 20, 2026